## FORSYTH *v.* BRILLHART ET AL.

[No. 202, September Term, 1957.]

*Decided April 28, 1958.*

The cause was argued before HENDERSON, PRESCOTT and HORNEY, JJ.

*William J. Dwyer,* for appellant.

*Charles F. Wagaman,* with whom were *Wagaman & Wagaman* on the brief, for appellees, Maurice G. Hoffman et ux.

Submitted on brief by *Omer T. Kaylor, Sr.,* for appellee, Lloyd A. Brillhart and by *Bruce C. Lightner* for appellees, Edith V. Leaf et al.

PRESCOTT, J., delivered the opinion of the Court.

Joseph H. Forsyth has appealed from a decree of the Cir-

cuit Court for Washington County, which denied his request to set aside a deed and grant him specific performance of a contract.

The appellee, Brillhart, was the owner of a farm, which contained about 115 acres of land. The farm was encumbered by a mortgage and a judgment, and Brillhart owed other money upon open accounts—all totaling some $6,000. On May 6, 1957, Forsyth and Brillhart began negotiations relative to Forsyth's purchasing of the farm. The appellant testified that he made several trips to the farm within the next few days. During his conversations with Brillhart, it was agreed between them that Forsyth would purchase the property for $7,750; that Brillhart was to have the right to plow and seed about 15 to 20 acres for a corn crop, which would be cultivated and harvested by him, requiring Brillhart's possession of said tract until, at least, the latter part of November, 1957; that Brillhart reserved the cherry and berry crops; that Forsyth was to reconvey to Brillhart, if Brillhart so desired, a tract of about one acre of the land, upon which Forsyth was to have erected, for Brillhart, a small dwelling with the balance of the purchase money in excess of Brillhart's indebtednesses; and that if Forsyth built the new house for Brillhart, Brillhart could have possession of the existing dwelling on the property until the new house was completed, but if no new house were constructed, then "sixty days we talked about" was discussed as to the delivery of possession of the existing dwelling. On May 9, 1957, after the above had been agreed upon, Brillhart signed the following memorandum:

"May 9, 1957.

Received of Joseph H. Forsyth $50.00 as part payment on farm of 115 acres. Price to be $7,750.00. To be settled for on or before thirty days of this date.

Lloyd A. Brillhart."

A day or so thereafter, Brillhart went to Forsyth and tendered back the down-payment and requested a return of the memorandum, which was refused.

On May 21, 1957, Brillhart signed a contract with the

appellees, Maurice G. Hoffman and wife, for the sale of the farm, and a deed conveying the property to the Hoffmans was executed and recorded. The Hoffmans had knowledge of the prior memorandum of sale, but they also had notice that Brillhart claimed the memorandum did not contain the full agreement.

## I

It is obvious and conceded the transaction related above comes within the purview of the provisions of the Statute of Frauds. No question concerning the admissibility of evidence is here concerned. Cf. *Fisher v. Andrews,* 94 Md. 46, 52, 50 A. 407. The appellant earnestly contends that the memorandum, above quoted in full, is sufficient to satisfy the requirements of the Statute; while the appellees, just as seriously, urge that it is not. A contract required to be in writing under the Statute of Frauds cannot be enforced if it be partly written and partly oral. *Applestein v. Royal Realty Corp.,* 181 Md. 171, 175, 28 A. 2d 830; *Rinaudo v. Bloom,* 209 Md. 1, 8, 120 A. 2d 184. In the recent case of *Sinclair v. Weber,* 204 Md. 324, 331, 332, 104 A. 2d 561, this Court recognized the rule that while the name of the party to be charged must be signed to the memorandum, it is sufficient merely to name the other party or give some designation of him whereby he could be identified without parol proof; and adopted the statement of the American Law Institute that a memorandum, in order to make enforceable a contract within the Statute of Frauds, may be any document or writing, formal or informal, signed by the party to be charged or by his agent actually or apparently authorized thereunto, which states with reasonable certainty, (1) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, and (2) the land, goods or other subject-matter to which the contract relates, and (3) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made. 1 *Restatement, Contracts,* sec. 207; *London v. Riebel,* 189 Md. 376, 56 A. 2d 34. It should require no elaborate discussion or reference to details to demonstrate that the mem-

orandum fails to comply with the above requirements: a casual comparison of the memorandum and the statement of facts testified to by the appellant discloses that the memorandum does not contain "the terms and conditions of all the promises constituting the contract." The learned chancellor below summed up the question under consideration thusly:

> "Brillhart relies on the Statute of Frauds as a defense to these proceedings. The facts are undenied that the memorandum does not contain the full understanding between the parties. Mr. Forsyth fairly and honestly admits that as part of the agreement Brillhart was to retain a portion of the farm, roughly 100 feet by 300 feet and that he had agreed to build Brillhart a two-room shack on the land retained, the same to be paid for out of the balance of purchase money due. This understanding was not included in the written agreement and is fatal to the plaintiff's case."

With this conclusion, we agree.

## II

The appellant assigns as his other claim of error that the chancellor refused to hold that the recorded deed from Brillhart to the Hoffmans "had its origin in fraud and ought to be set aside, as a fraudulent conveyance." He argues that because the Hoffmans had knowledge of the memorandum of sale made between Forsyth and Brillhart, the subsequent negotiations between the Hoffmans and Brillhart and the consummation of the transfer of the property to the Hoffmans rendered the transaction fraudulent, and the deed whereby the transfer of title was effected should be set aside as a fraudulent conveyance. This argument is based upon a misconception of the principles of law involved in the factual situation as presented. Notice, actual or constructive, of a contract which is unenforceable under the Statute of Frauds, will not prevent the person having such notice, who purchases the property from the original owner and receives a

transfer of the title, from obtaining a good title; nor will it render the transaction fraudulent. This is based upon the theory that although the original contract may subsist, the vendor may elect to rescind it and pass title to the property to another not a party to, or interested in, the prior agreement; and his action in selling the property to the second purchaser constitutes such an election. This the vendor has an absolute right to do, and the fact that the new grantee had notice of the prior agreement creates no legal objections to the second conveyance, for there were no enforceable equities attaching under the former contract. *Koenig v. Dohm* (Ill.), 70 N. E. 1061; *Gibson v. Stalnaker* (W. Va.), 106 S. E. 243; *Givens v. Mason* (Ky.), 266 S. W. 7, 8; *Restatement, Contracts,* sec. 220, p. 297; 2 *Williston, Contracts,* (Rev. Ed.), sec. 529, p. 1527; 2 *Corbin, Contracts,* sec. 290, p. 59; 37 *C. J. S., Statute of Frauds,* page 719; 49 *Am. Jur., Statute of Frauds,* sec. 592. Cf. *Morris v. Wilson,* 187 Md. 217, 49 A. 2d 458; *Johnson v. Lennox* (Colo.), 133 P. 744. We find no error in the chancellor's rulings.

*Decree affirmed, with costs.*